COMMONWEALTH *vs.* DENNIS O'SHEA.

No. 95-P-2177.

Worcester. June 12, 1996. - August 14, 1996.

Present: KASS, SMITH, & LENK, JJ.

*Abuse Prevention. Protective Order. Practice, Criminal,* Required finding. *Words,* "Vicinity."

At the trial of a complaint for violation of a temporary restraining order under G. L. c. 209A, requiring the defendant to "stay at least 100 yards away from [the plaintiff]" and to "stay away from [the plaintiff's] workplace," the defendant was entitled to a required finding of not guilty in circumstances in which there was no evidence that the defendant came within 100 yards of the plaintiff or that he entered the area of the plaintiff's workplace, which, at the time in question, the plaintiff had left. [117-119]

COMPLAINT received and sworn to in the East Brookfield Division of the District Court Department on May 31, 1995.

The case was heard by *Paul F. LoConto,* J.

*Richard J. Fallon* for the defendant.

*John M. Goggins,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of a complaint charging him with a violation of a protective order issued under the provisions of G. L. c. 209A. The Commonwealth claimed that the defendant violated the order by failing to stay away from the plaintiff's workplace. He was found guilty after a one-day jury-waived trial and sentenced to eighteen months in a house of correction. During the trial, the judge denied the defendant's motion for a required finding of not guilty at the close of the Commonwealth's evidence. The motion was renewed at the close of all of the evidence and again denied. On appeal, the defendant raises one issue — whether the judge committed error in denying his motions for a required finding of not guilty.

"In reviewing the denial of a motion for a required finding of not guilty, we determine whether, on the basis of the evidence viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Robicheau,* 421 Mass. 176, 181 (1995). We summarize the evidence introduced by the Commonwealth at the defendant's trial.

On May 29, 1995, following an ex parte hearing on application of Mary Jacobs (a pseudonym), a District Court judge issued a temporary restraining order pursuant to G. L. c. 209A directed against the defendant. The order provided that the defendant was "not to abuse" Jacobs; that he "stay at least 100 yards away from [her and her three children]"; that he "stay away from [her] residence . . . at [named address] North Brookfield" and "stay away from [her] workplace [the town hall] . . . located at 185 Main Street, N. Brookfield."[1]

Jacobs testified to the events leading up to the obtaining of the restraining order. She had had a relationship with the defendant which ended in April or May 1995. On May 28, 1995, after their relationship had ended, Jacobs spoke at an AA meeting about her fear of the defendant, but did not mention his name. There was evidence that on the following day, at another AA meeting, the defendant "said that he had been humiliated the night before, . . . that . . . someone had broken his confidence[,] . . . that he didn't feel like drinking or using drugs but that he wanted revenge. He wanted physical revenge." Jacobs learned of the defendant's comments and that day obtained the protective order.

On May 30, 1995, at 9:15 A.M., Jacobs went to work at the town hall in North Brookfield. At 9:30 A.M., she spoke with Sergeant Thomasian of the North Brookfield police. She told him that she would be away the following three days, that the defendant was aware of her plans, and that she was nervous that he would try to break into her house. She gave Thomasian a description of the defendant's car. Jacobs worked in

---

[1]Under G. L. c. 209A, § 3(*c*), as appearing in St. 1990, c. 403, § 3, a "vacate . . . and remain away" order may include the complainant's workplace. See also G. L. c. 209A, § 1, as appearing in St. 1990, c. 403, § 2, which also states that "[a] vacate order may include in its scope . . . the [complainant's] workplace."

her office until about 11:15 A.M., when she left the town hall on other town business. She returned to her office at 1:00 P.M. and left at 2:30 P.M.

At 11:30 A.M., Thomasian saw the defendant's car parked in front of The News Room, a local coffee shop. The News Room is located on the same side of Main Street as the town hall, but the two locations are separated by a side street. From where the defendant parked his car in front of The News Room, he could observe the town hall parking lot where Jacobs usually parked her car. Her car was not there.

Thomasian watched the defendant go to his automobile, put a flannel shirt on, and then go into The News Room. After about fifteen minutes, the defendant came out of The News Room, got into his car, and drove away. At that point, about 12:30 P.M., Thomasian stopped the defendant's car and asked him if he knew that there was a restraining order against him. The defendant said, "Yes, I have it right here in my wallet," and produced a piece of paper. Thomasian then asked the defendant, "Well, . . . don't you realize on that restraining order that you're supposed to stay away from where this person works?" The defendant said, "Yes." The defendant told the officer that he was just going to the bank and that he noticed that Jacobs's car was not parked outside of the town hall. The defendant was then arrested for violating the protective order.

The defendant testified that on May 30, 1995, he drove from Holland, where he lives, to North Brookfield, about a thirty to forty-five minute drive, to make a deposit in a bank to cover some checks that he had previously cashed. He parked in front of The News Room, walked to a bank located on a side street, and proceeded to drive away, when he was arrested. He admitted that he knew that Jacobs worked at the town hall but testified that he did not see her that day.

On appeal, the defendant argues that the trial judge erred in not granting his motions for a required finding because he did not violate any part of the protective order — he was never within 100 yards of Jacobs, and he never entered her workplace, the town hall. The Commonwealth claims, however, that the order clearly stated that the defendant was to "stay away" from Jacobs's workplace, and the defendant violated that order because he knew that Jacobs worked at the town hall, he intentionally parked his car near the town

hall and was, according to the Commonwealth, in the "vicinity" of Jacobs's workplace when he walked on the sidewalk across the street from the town hall.

On a complaint charging a defendant with a violation of a G. L. c. 209A order, the Commonwealth must prove that "there was *a clear*, outstanding order of the court, that the defendant knew of that order, and that the defendant clearly and intentionally disobeyed that order in circumstances in which he was able to obey it" (emphasis added). *Commonwealth* v. *Brogan*, 415 Mass. 169, 171 (1993), quoting from *Furtado* v. *Furtado*, 380 Mass. 137, 145 (1980). The word "vicinity," according to Black's Law Dictionary (6th ed. 1990), means, "Quality or state of being near, or not remote; nearness; propinquity; proximity; a region about, near or adjacent . . . ." The word is so imprecise that if we hold that the "stay away" order means stay away from the "vicinity" of the workplace, the order would fail to meet the requirement that it must be clear.

By ordering the defendant to stay away from the workplace, the order created a safe haven for Jacobs at her workplace, a place "in which no further abuse need be feared . . . ." *Commonwealth* v. *Gordon*, 407 Mass. 340, 347 (1990). We agree with the Commonwealth that the "stay away" order is not limited to preventing the defendant from merely entering the town hall itself (Jacobs's workplace). Rather, such an order, even as specific as this one is, extends to all of the property on which the workplace is located including the adjacent parking lot.

Here, the defendant was ordered to stay at least 100 yards away from Jacobs. The order created a zone of privacy of 100 yards around Jacobs wherever she was present. If Jacobs was at her workplace, the defendant could not come within 100 yards of that workplace inclusive of its area as defined in this opinion. Because of her work schedule on May 30, 1995, there was no evidence that the defendant came within 100 yards of Jacobs's workplace while she was there or that the defendant entered the area of the workplace while she was not there. The defendant, therefore, did not violate the order

and his motion for a required finding of not guilty should have been allowed.

> *Judgment reversed.*
>
> *Finding of guilty set aside.*
>
> *Judgment for the defendant.*